541-07/DPM/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs
RIMA SHIPPING CO. LTD.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Facsimile: (212) 425-1901
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RIMA SHIPPING CO. LTD.,

                Plaintiff,

-against-

EVERTRADE, S.A.,

                Defendant.
-----------------------------------------------------------------x

07 CIV. _____ ( )

**VERIFIED COMPLAINT**

Plaintiff RIMA SHIPPING CO. LTD. ("RIMA"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant EVERTRADE S.A. ("EVERTRADE"), alleges upon information and belief as follows:

### JURISDICTION

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for breaches of a maritime charter party contract. The case also falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, *et seq.* and / or the Arbitration Act, 9 U.S.C. §1 *et seq.* and /or §201 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

NYDOCS1/295233.1

## PARTIES

2. At all times relevant hereto, RIMA was and still is a foreign business entity organized and existing under the laws of a foreign country, with a registered office and place of business at Block B, Fortuna Court, 284 Archbishop Makarios III Avenue, Limassol, Cyprus. RIMA was at all relevant times the registered owner of the vessel M/V SOURIA.

3. At all times relevant hereto, EVERTRADE was and still is a business entity organized and existing under the laws of a foreign country, with an office and place of business at 18 Avenue Franklin d'Roosevelt 75008 Paris, France.

## NATURE OF THE CLAIMS

4. On or about June 9, 2004, RIMA, as owner of the M/V SOURIA, entered into a maritime contract on an amended GENCON charter party form with EVERTRADE, as charterer, for the use and operation of the vessel.

5. The charter party contract between RIMA and EVERTRADE contemplated one charter trip for the transportation onboard the vessel of 11,000 MT of ammonium nitrate in bulk, 3% more or less in charterer's option, from the loading ports of Tallinn, Estonia, and Riga, Latvia, to the discharging ports of Casablanca and Agadir, in Morocco.

6. RIMA duly tendered the M/V SOURIA under the charter party agreement and the vessel commenced performance under the command and operation of EVERTRADE.

7. RIMA has met all of its obligations to EVERTRADE pursuant to their charter party agreement.

## CLAIM FOR OUTSTANDING FREIGHT & DEMURRAGE

8. Defendant EVERTRADE, as per the terms of the charter party agreement, was required to complete loading operations within 3 days 3 hours and 25 minutes and discharge operations within 8 days 8 hours and 48 minutes. EVERTRADE, while completing loading

operations within the permitted time, completed cargo discharging operations in excess of 22 days, utilizing 13 days 22 hours and 37 minutes above and beyond the time allotted in the parties' contract. As a result, EVERTRADE incurred demurrage at the discharge ports for which it became and is liable to RIMA.

9.      Pursuant to the terms of the charter party, EVERTRADE was required to pay to RIMA the sum of $6,500/day for each day the vessel remained in demurrage. The amount of demurrage due to RIMA totaled the sum of $90,625.60 calculated as follows: (a) Port of Casablanca, 5.19583 demurrage days; and (b) Port of Agadir, 8.74653 demurrage days, totaling 13,9424 demurrage days x $6,500/day amounting to $90,625.60.

10.     By a letter dated 2nd August 2004, RIMA served upon EVERTRADE a Final Freight Statement showing a balance due to Owners of $105,087.89, which included the balance of freight still unpaid by EVERTRADE .

11.     Although RIMA duly demanded full payment, EVERTRADE, in violation of the charter party contract, has wrongfully refused or otherwise failed to pay same.

## CLAIM FOR CARGO DAMAGE

12.     During the discharge operations at the Ports of Casablanca and Agadir, cargo receivers complained that the cargo had been damaged. In fact, cargo interests commenced legal proceedings against RIMA and the Master of the M/V SOURIA and arrested the M/V SOURIA at the Port of Casablanca.

13.     To effect the release of the vessel from arrest and to secure the cargo claims, RIMA was compelled to provide bank guarantees to claimants. At the Port of Agadir, RIMA was also compelled to post security in the form of bank guarantees to secure additional cargo claims. The bank guarantees that RIMA has been required to lodge for the benefit of the Casablanca and Agadir cargo interests total $821,000.

14. In addition, RIMA has, to date, incurred $35,000 in legal defense costs in Morocco as well as $64,758.37 in bank fees for the bank guarantees that were issued for the Moroccan cargo interests' benefit.

15. Under the terms of the subject charter party, EVERTRADE is fully liable to RIMA for all cargo damage being claimed by cargo interests in Morocco.

16. RIMA made due demand for payment to EVERTRADE but EVERTRADE has wrongfully refused or otherwise failed to pay the cargo interests' claims.

### RELIEF SOUGHT

17. Pursuant to the terms of the charter party contract, all disputes are subject to London arbitration, with English law to apply. RIMA has commenced arbitration proceedings against EVERTRADE in London. RIMA specifically reserves its right to arbitrate the merits of its dispute with EVERTRADE pursuant to the terms of the charter party contract.

18. This action is brought to obtain jurisdiction over EVERTRADE and to obtain security in favor of RIMA in respect to its freight, demurrage and cargo damage claims against EVERTRADE, including but not limited to interest, RIMA's anticipated attorneys' fees and costs in the arbitration, all of which are recoverable as part of the Plaintiff's main claims under English law.

19. After investigation, Defendant EVERTRADE cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant or as may be held, received or transferred for its benefit at, moving through,

or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

20. As nearly as presently can be computed, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by RIMA against EVERTRADE includes:

(a) RIMA's claim for outstanding freight and demurrage in the sum of $105,087.89;

(b) RIMA's claim for damage to cargo being asserted by the Moroccan cargo interests totaling $920,758.37 and comprising the $821,000 bank guarantees, the $35,000 in legal fees incurred to date and the $64,758.37 incurred in bank fees;

(c) Interest in the amount of $265,640.68, calculated on the above sums at the rate of 7.75% per annum, compounded quarterly, for three years, the estimated time it will take to obtain a final arbitration award according to the advice of English solicitors, which interest is recoverable under English law; and

(d) Legal fees, arbitrator fees and costs that will be incurred by Plaintiff in respect to the London arbitration which are recoverable pursuant to English law and are estimated to be by English solicitors in the sum of $200,000.00.

21. Based upon the foregoing, the total amount RIMA seeks to attach in this action, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, is **$1,491,486.94.**

W H E R E F O R E, Plaintiff RIMA prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant EVERTRADE, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim of $1,025,846.26, plus interest, costs and attorneys' fees;

b. That if the Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant as described herein, up to and including the amount of the claims of **$1,491,486.94** be restrained and attached, including, but not limited to any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held or being transferred to or for the benefit of the Defendant at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein;

c. That the Court enter an order directing Defendant to appear and respond in arbitration as required, or, to the extent an award is rendered against the Defendant, to confirm that award as a judgment of this Court; and

d. That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       December 10, 2007

>                    FREEHILL HOGAN & MAHAR, LLP
>                    Attorneys for Plaintiff
>                    RIMA SHIPPING CO. LTD.
>
> By:    _____
>        Don P. Murnane, Jr. (DM 3639)
>        Manuel A. Molina (MM 1017)
>        80 Pine Street
>        New York, NY 10005

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

Don P. Murnane, Jr., being duly sworn, deposes and says:

1. I am an attorney with the law firm of Freehill Hogan & Mahar, LLP, attorneys for the Plaintiff in this action. I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding this claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within the State of New York.

_____
Don P. Murnane, Jr.

Sworn to before me this
10 th day of December, 2007

_____
NOTARY PUBLIC

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

NYDOCS1/295233.1                             7